# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| DIANA CHRISTINE WILKINS<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No.: 2:17-cv-00328-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Diana Christine Wilkins's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.[2] *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On June 4, 2013, Petitioner Diana Christine Wilkins ("Petitioner") applied for Title II disability and disability insurance benefits. (AR 17.) Petitioner alleged disability beginning September 3, 2003, but later amended the alleged onset date of disability to November 20, 2009. (AR 17, 283.) Her claim was denied initially on August 28, 2013 and then again on reconsideration on February 11, 2014. (AR 17.) On April 9, 2014, Petitioner timely filed a

---

[1] The pleading was titled and framed as a complaint, but it is more properly treated as a petition for review, as it seeks review of a final agency action.

[2] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

MEMORANDUM DECISION AND ORDER – 1

Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at a hearing held on September 10, 2015 in Moreno Valley, California. (*Id.*) Impartial vocational expert Mary E. Jesko also appeared and testified at the hearing. (*Id.*)

On February 19, 2016, ALJ Dana E. McDonald issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her amended alleged onset date through her date last insured. (AR 28.) Petitioner timely requested review from the Appeals Council on or about April 21, 2016.[3] (AR 4.) On June 12, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner filed this case. She contends that "[t]he conclusions and findings of fact of the [respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 1 (Dkt. 1). Petitioner argues that the ALJ erred by improperly discounting her testimony, by disregarding the opinion and medical evidence of record submitted by treating provider Dr. Haider, and by failing to obtain medical expert testimony. *See generally* Pet'r's Br. ISO Pet. for Review (Dkt. 11). Petitioner asks for reversal and a holding that she is disabled, or, in the alternative, that the case be remanded for a further hearing. Pet. for Review 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

---

[3] 20 C.F.R. § 404.968(a)(1) requires a request for review by the Appeal Council to be filed within 60 days after the date the claimant receives notice of the hearing decision. Petitioner filed her request 62 days after the ALJ's decision issued. However, her filing was nonetheless timely because Social Security regulations calculate the 60-day appeal deadline starting five days after the date of the notice. 20 C.F.R. § 405.5.

Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her amended alleged onset date of November 20, 2009 through her date last insured of December 31, 2009. (AR 19.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, through her date last insured, Petitioner had the following severe impairments: "degenerative disc disease cervical and lumbar spine; status post lumbar fusion (November 2007) with status post lumbar hardware removal (August 2009); status post right knee arthroscopy (February 2009); and depression." (AR 19.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 20–21.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past

relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that, through the date last insured, Petitioner had the RFC:

> to perform light work as defined in 20 CFR 40.1567(b) as follows: could lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours and sit for 6 hours in an 8 hour workday; and was limited to simple repetitive tasks.

(AR 21.) The ALJ further found that Petitioner was unable to perform any of her past relevant work through her date last insured. (AR 27.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner's RFC is compatible with representative occupations such as "garment folder," "seam presser," and "assembler." (AR 28.) The ALJ further found that these jobs exist in significant numbers in the national economy. (*Id.*)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "was not under a

disability, as defined in the Social Security Act, at any time from November 20, 2009, the amended alleged onset date, through December 31, 2009, the date last insured." (AR 28.)

**B.     Analysis**

Petitioner raises several issues with the ALJ's decision.  First, she argues the ALJ improperly discredited her testimony about the severity and disabling effects of her pain.  Next, she argues the ALJ erred in his evaluation of the medical records and opinions provided by treating surgeon Dr. Haider.  Finally, she argues the ALJ erred by failing to obtain medical expert testimony regarding whether the Petitioner's impairments are medically equal to a listed impairment.  *See generally* Pet'r's Br. ISO Pet. for Review (Dkt. 11).  Each argument will be addressed in turn.

   **1. The ALJ Properly Evaluated Petitioner's Pain Symptom Testimony.**

Petitioner argues the ALJ failed to offer specific, clear and convincing reasons for discrediting her pain symptom testimony.  Pet'r's Br. ISO Pet. for Review 4–5 (Dkt. 11).  She acknowledges the ALJ's decision mentions pain, but she contends the decision did not meet the standard necessary to discredit her subjective complaints.

An ALJ may reject a claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  However, ALJs are not required to believe every allegation of disabling pain. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  Social Security regulations provide specific instruction on how an ALJ is to evaluate a claimant's allegations of pain:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work (or, if

you are a child, your functioning). However, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work (or if you are a child, your functioning).

20 C.F.R. § 416.929(a).

The ALJ discussed Petitioner's allegations of pain at various points in his decision. At one point, he expressly stated that he gave "greater deference to the claimant's pain complaints" when evaluating the degree of difficulty Petitioner experienced with respect to concentration, persistence, or pace. (AR 21.) The ALJ noted that Petitioner subjectively rated her pain at a level of 6 or 7 on a pain scale of 10. (AR 22.) He also noted that Petitioner "testified that she spends most of the day in a reclining chair. She drives locally a couple of times a week. She resides with her husband, two daughters and 7-year-old grandson. She spends her day watching television and floating in the pool to relieve her pain. Sometimes she babysits her grandson." (AR 22.) He also repeated her testimony that she could "stand continuously for maybe 10 minutes, sit in an upright position for maybe 5 minutes, and walk for maybe 10 minutes, but that after doing these activities, her pain level was raised to a level of 7 or 8." (AR 22.)

Elsewhere, the ALJ stated that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 22.) Later in the decision, the ALJ noted a medical record dated December 30, 2009 – one of the few records from within the closed period at issue – indicating Petitioner had reported to Dr. Haider that, despite "having residual sciatic pain to the right lower extremity, in addition to some back pain … she was remaining active with exercising, stretching and utilizing a stair stepper." (AR 23, 369.) Additionally, the ALJ noted that in a mental status examination completed in March 2009, "Dr. Addario observed that the claimant's gait and posture were generally intact, and despite complaints of back pain, the claimant was able to sit through a two-hour examination without overt evidence of pain." (AR 24, 285.) Putting this all together, the ALJ ultimately stated:

> In formulating the claimant's residual functional capacity, the undersigned has not only considered the objective medical and opinion evidence, but has also considered her subjective allegations of pain and other symptoms. Having done so, the undersigned finds that the claimant's allegations concerning her impairments and inability to work prior to December 31, 2009 are not fully persuasive in light of several inconsistencies. The claimant testified as to the necessity to spending most of the day sitting in a recliner. However, the evidence prior to the expiration of her insured status did not describe the claimant as being confined to a recliner. Further, there was no evidence of atrophy as would be expected if the claimant were truly as inactive as alleged. Further, the claimant's description of the severity of her pain and resulting limitations seem extreme. For example, the claimant testified as to being able to sit in an upright position for maybe be 5 minutes. However, this contrasts with the observation of Dr. Addario that the claimant was able to sit through a two-hour evaluation without exhibiting overt evidence of pain. The contrast in terms of her assertion as to her sitting tolerance similarly casts doubt as to her allegations in terms of walking and standing, considering the observation of Dr. Addario that her gait and posture were generally intact.
> The claimant described being able to engage in daily activities typical of most individuals. According to her reporting to Dr. Vandenburgh, the claimant was able to do household chores, spend time on her computer, socialize, assist her children with homework, water the garden, care for her dog, drive, handle her money and follow up with doctors and lawyers appointments (Ex 6F pg 3). It thus appears that despite her impairments, the claimant was able to engage in a somewhat normal level of daily activities. The physical and mental capabilities requisite to performing many of these tasks replicate those necessary for sustaining employment.

(AR 26.)

Petitioner contends that the ALJ's treatment of her allegations of pain failed to provide specific, clear and convincing reasons for discrediting her pain complaints. Pet'r's Br. ISO Pet. for Review 4 (Dkt. 11). The Court is not persuaded that the ALJ failed to meet this standard. The ALJ expressly referred to inconsistencies between Petitioner's testimony and the medical evidence of record. Petitioner claimed to spend most of her day in a recliner, but there was no evidence in the record of atrophy or of such a limitation. Petitioner claimed to be able to sit upright for only five minutes, but she was observed to sit through a two-hour evaluation without exhibiting overt evidence of pain. In short, the ALJ cited multiple examples of inconsistencies between Petitioner's allegations of the severity of her pain and the medical evidence of record. These examples constituted specific, clear and convincing reasons for his evaluation of Petitioner's credibility.

Petitioner also suggests that the ALJ "blended the opinions of a consultative psychologist with the Petitioner's pain complaints." Pet'r's Br. ISO Pet. for Review 4 (Dkt. 11). She quotes the ALJ's treatment of Dr. Vandenburgh's evaluation:

> A consultative examiner, Dr. Vandenburgh, assessed the claimant with moderate limitations concerning her ability to sustain an ordinary routine without sustained supervision. She was able to perform simple repetitive tasks but would likely have impairment sustaining the task for an extended period of time due to pain. However, Dr. Vandenburgh also found no more than a slight degree of impairment in the claimant's ability to concentrate for at least two-hour increments at a time.

*Id.* (quoting AR 25). Petitioner contends the psychologist was not qualified to assess the Petitioner's orthopedic pain complaints and that the ALJ's reliance on the psychologist's opinion was error.[4]

The Court is not persuaded that the ALJ's evaluation of Dr. Vandenburgh's assessment was improper. Her assessment actually supports rather than weakens Petitioner's claims of pain, in that Dr. Vandenburgh's opinion connected Petitioner's pain to a functional limitation.[5] But Petitioner does not argue that Dr. Vandenburgh's assessment of her pain was incorrect or did not go far enough. Rather, Petitioner argues that Dr. Vandenburgh was not qualified to opine as to her pain at all. Assuming without deciding that this is so, Petitioner has nonetheless not shown reversible error. If the ALJ's written decision did not include the sentence referring to Dr. Vandenburgh's opinion of the limiting effects of Petitioner's pain, the decision would still be supported. Nothing in the ALJ's decision indicates that his analysis of Petitioner's pain was guided by Dr. Vandenburgh's opinion, which was focused on Petitioner's mental capacity to perform work tasks. The ALJ did not mention Dr. Vandenburh or her opinion in the portion of his decision discounting Petitioner's pain allegations. (*See* AR 26.) Instead, as discussed *supra*, the ALJ mentioned inconsistencies between other medical evidence and medical opinions of record on the one hand and Petitioner's own testimony on the other hand. Thus, the ALJ did not err in his evaluation of Dr. Vandenburgh's opinion.

---

[4] Although neither the ALJ nor Petitioner mention it, Dr. Vandenburgh herself qualified her opinion by remarking that "[a]n appropriate specialist needs to comment on the claimant's physical condition." (AR 354.)

[5] Moreover, Dr. Vandenburgh's assessment is the only medical opinion Petitioner cites that does make such a connection between Petitioner's pain and any functional limitations.

In sum, Petitioner has not shown error in the ALJ's consideration of her allegations of pain. For this reason, her petition must be denied on this issue.

**2. The ALJ Properly Evaluated Dr. Haider's Medical Records and Opinion.**

Petitioner argues the ALJ erred in three separate ways with respect to the record evidence provided by treating surgeon Dr. Thomas Haider, M.D. Pet'r's Br. ISO Pet. for Review 6–10 (Dkt. 11). First, she argues the ALJ ignored the medical findings and examinations made by Dr. Haider. *Id.* at 6–8. Next, she argues the ALJ failed to address the medical opinion of Dr. Haider. *Id.* at 8–9. Finally, she argues the ALJ should have given greater weight to Dr. Haider's opinions and his objective medical findings both because he is a specialist and because he was Petitioner's primary treating physician. *Id.* at 9–10.

Petitioner highlights the ALJ's statement that "in the absence of a function-by-function analysis of the claimant's limitations, the opinion that the claimant is temporarily totally disabled or unable to return to work is of no probative value and worthy of little weight." *Id.* at 6 (quoting AR 25). Petitioner notes that there are 244 pages of medical records from Dr. Haider in the record, covering nearly a decade of treatment (including the entire period from Petitioner's amended alleged onset date of November 20, 2009 through her date last insured of December 31, 2009). Petitioner suggests that "[t]he Court can literally pull up any of Dr. Haider's reports and see the results of his examination at any given visit throughout the relevant period." *Id.* at 7. Petitioner then quotes a portion labeled "Objective Findings" in one of Dr. Haider's records, that discusses tenderness in various regions, restriction of motion, pain, and other symptoms. *Id.* (quoting AR 369). Petitioner then argues that "[t]he medical records obtained from Dr. Haider do contain a function by function analysis of the claimant's limitations contrary to the opinion of the ALJ." *Id.*

The Court is not persuaded that the record Petitioner quoted, dated January 14, 2010, contains a "function-by-function analysis of the claimant's limitations." The record does include the objective findings Petitioner indicated. But those objective findings are only tangentially related to any analysis of function. They disclose that "motion is restricted" and that "straight leg raising is negative" both to the left and to the right "in a sitting as well as supine position." (AR 369.) But such objective findings describe the clinician's raw physical and diagnostic observations without anchoring such observations to any broader assessment of functioning. Moreover, nothing in the quoted record directly addresses any limitations Dr. Haider perceived. The same record indicates that Petitioner "has been instructed to … remain off-work [for] 6 weeks," but it does not discuss any particular functional limitations that necessitated such an instruction. (AR 370.) Furthermore, the ALJ stated that "the clinical and objective findings within the record, including those of Dr. Haider, are consistent with the conclusion that the claimant could do work within the limitations noted herein." (AR 25.) Petitioner understandably disagrees, but she does not directly refute this statement by the ALJ. She identifies no evidence indicating that Dr. Haider's records support more significant limitations.[6]

Petitioner does not cite any other records to refute the ALJ's statement that there is an "absence of a function-by-function analysis of the claimant's limitations" in Dr. Haider's records. Because Petitioner did not cite to specific evidence challenging the ALJ's statement that there was a lack of a function-by-function analysis of Petitioner's limitations, her petition

---

[6] Petitioner states that "Dr. Haider's ultimate opinion [was] that Petitioner is disabled," but she does not cite to record evidence supporting such an assertion. Pet'r's Br. ISO Pet. for Review 8 (Dkt. 11). The Court's independent review of the record has identified no evidence that Dr. Haider held such an opinion. As the ALJ explained, an opinion that a person is "temporarily totally disabled" for purposes of workers' compensation laws has no bearing on a Social Security disability determination. (AR 25.)

must be denied on this issue. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an issue Petitioner failed to argue with specificity).

The ALJ did not ignore Dr. Haider's medical records. To the contrary, the ALJ cited Dr. Haider's records several times. (AR 23, 25.) An ALJ is "not required to discuss every piece of evidence" or "to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006 (9th Cir. 2003). Where a doctor's report does not assign any specific limitations on the claimant, the ALJ may not need to discuss it. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–1223 (9th Cir. 2010). Here, the ALJ discussed the evidence he found probative. He did not find evidence of stated functional limitations within Dr. Haider's records. Petitioner has not shown that the ALJ's interpretation of the evidence was improper or incorrect in this regard, so her petition must be denied on this issue.

Petitioner also charges the ALJ with failing to address the medical opinion of Dr. Haider. Pet'r's Br. ISO Pet. for Review 8–9 (Dkt. 11). This argument echoes Petitioner's prior argument. She contends that:

> in this case the ALJ disregarded the opinions of Dr. Haider, and more importantly, his medical exam findings . . . The ALJ in this case failed to evaluate every medical opinion the ALJ received from Dr. Haider. If the ALJ did not discuss the medical findings and opinions of Dr. Haider, the ALJ did not consider them.
> As previously discussed, the medical records of Dr. Haider contain a lot of objective medical findings and results of testing. These are not mere opinions, and even if the ALJ were to ignore any "opinions," the ALJ cannot ignore the physician's objective medical findings and results of testing.

*Id.* at 9.

Petitioner's argument fails because she does not identify any particular opinion of Dr. Haider's the ALJ failed to address. Hypothetically, the ALJ would have committed reversible error if the case file contained a record of Dr. Haider opining as to Petitioner's functional

limitations and the ALJ did not address such opinion. But Petitioner has not identified any record opinions the ALJ should have considered but did not.

Petitioner's argument conflates medical opinions with other types of medical evidence. Per 20 C.F.R. § 404.1513(a)(2), addressing categories of evidence, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" certain specified abilities. Such evidence is distinct from "objective medical evidence," which is defined as "medical signs, laboratory findings, or both," or "other medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(1), (3). Clarifying the definition of medical opinions, 20 C.F.R. § 404.1527(a)(1) provides that "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Nothing in the evidence Petitioner identifies addresses Dr. Haider's opinions or judgments about her limitations or restrictions. Accordingly, she has not shown that the ALJ erred by failing to address any such "opinions."

Finally, Petitioner argues that the ALJ should have given greater weight to Dr. Haider's opinions and objective medical findings because he is a specialist and because he was Petitioner's primary treating physician. Pet'r's Br. ISO Pet. for Review 9–10 (Dkt. 11). Petitioner correctly states the law that the Social Security Administration "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of

specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). It is also the law that "[g]enerally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 C.F.R. § 404.1527(c)(2)(ii).

But Petitioner does not articulate how giving such evidence greater weight would change the outcome of the case. The ALJ did discuss and rely on certain of Dr. Haider's medical records. (AR 23, 25.) The ALJ did not discredit or reject any of Dr. Haider's medical records. Moreover, as discussed *supra*, Petitioner has not pointed to any opinion of record by Dr. Haider. The ALJ did not err by failing to give proper weight to a medical opinion that does not appear in the record. The cited regulations address the weight to be given to a medical opinion. They do not apply here because Petitioner has not identified any medical opinion of Dr. Haider.

In sum, Petitioner has not shown that the ALJ erred in his treatment of the evidence furnished by Dr. Haider. Her petition will be denied on this issue.

### 3. The ALJ Was Not Required to Obtain Medical Expert Testimony.

The ALJ did not hear testimony from an impartial medical expert during the hearing in this matter. Petitioner contends that it was reversible error for the ALJ not to obtain such testimony. Pet'r's Br. ISO Pet. for Review 10–13 (Dkt. 11). She relies on SSR 96-6p, a policy interpretation of the Social Security Act.[7] As relevant here, SSR 96-6p provides that:

> an administrative law judge … must obtain an updated medical opinion from a medical expert … [w]hen additional medical evidence is received that in the

---

[7] Although SSR 96-6p was rescinded and replaced by SSR 17-2p on March 27, 2017, SSR 96-6p applies in this case because Petitioner's claim was filed prior to that date. 2017 WL 3928306.

opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

1996 WL 374180 pp. 3–4.

Petitioner argues that the ALJ was required to call a medical expert at her hearing because there was new and material evidence which had not been reviewed by the State agency physicians. Pet'r's Br. ISO Pet. for Review 11–12 (Dkt. 11). There is no dispute that the case record was supplemented after the State agency consultants reviewed the case but before the ALJ's hearing. However, the mere introduction of additional medical records does not, by itself, obligate an ALJ to obtain testimony from a medical expert.

The requirement that the ALJ "must obtain an updated medical opinion" applies when "additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." There is no conclusion from the ALJ in the decision that the threshold referenced above was present in the record. Indeed, even while reviewing a more comprehensive record, the ALJ agreed with the State agency consultants' evaluation that Petitioner was not disabled as of her date last insured. Petitioner's argument does not call into question whether the ALJ held the opinion that the State agency consultants might change their finding based on the newly introduced evidence. Thus, SSR 96-6p imposed no obligation on the ALJ to obtain medical expert testimony. Accordingly, the ALJ did not err by declining to obtain such testimony.

Petitioner also argues that the ALJ was required to call a medical expert by the Hearings, Appeals, Litigation, and Law Manual, also known as the HALLEX. Pet'r's Br. ISO Pet. for Review 7–8 (Dkt. 15). Petitioner relies on HALLEX I-2-6-70(A)(note 3), which states that an

ALJ "is encouraged to consult with [a medical expert] when he or she must make an inference about the onset of disability." 1993 WL 751901.

HALLEX does, indeed, "encourage" consultation by the ALJ with a medical expert when inferences about disability onset are part of the decision facing the ALJ. But encouragement is not a requirement under the law, and HALLEX does not identify its discussion of the subject as anything other than, just that, an encouragement. Hence, it was not error for the ALJ to *not* consult with a medical expert on these facts. Additionally, the circumstances implicated in this HALLEX section are not found in this record. Here, the ALJ found that Petitioner was not disabled as of the date last insured; hence, there was no need to for the ALJ to "make an inference about the onset of disability."

In summary, Petitioner has not shown error in the ALJ's decision not to obtain medical testimony at the hearing.

## IV. CONCLUSION

Petitioner has not shown that the ALJ committed reversible legal error in evaluating her pain testimony, in his treatment of the evidence submitted by Dr. Haider, or by declining to obtain medical expert testimony. Accordingly, the ALJ's decision is affirmed.

## V. ORDER

Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: September 25, 2018

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge